# Exhibit "A"

**Century 21**
VAN SYCKEL – GOLDEN POST
REALTORS SINCE 1445

## CONTRACT FOR SALE OF REAL ESTATE

**\*\*THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND/OR CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**

Date: 10/20/2014

1. BETWEEN SELLER:  ALFRED T GIULIANO TRUSTEE TRANSADVANTAGE SOL
whose address is        140 BRADFORD DRIVE WEST BERLIN, NJ 08091-3209
2. AND BUYER        JULIA AND CHRISTOPHER PEHRSON
whose address is        156 MILLBROOK ROAD, WASHINGTON, NJ 07882
The words "BUYER" and "SELLER" include all BUYERS and SELLERS listed above.
3. AGREEMENT: SELLER agrees to sell to the BUYER and the BUYER agrees to buy from the SELLER the land and buildings, which are called "the property" in this agreement.
4. THE PROPERTY is described as follows: Lot 6.1; Block 61
on the Tax Map of the Boro of FRANKLIN TOWNSHIP , Warren County, New Jersey
Street Address    420 BLOOMSBURY ROAD
Approximate size of lot   1.09 ACRES

| | |
|---|---|
| 5. THE TOTAL PURCHASE PRICE IS | $ 215,000.00 |

6. MANNER OF PAYMENT
A. Monies paid at this time for which this is a receipt (see Paragraph #21)   $ 1,000.00
B. Additional deposit moneys to be paid on or before   10 DAYS AFTER ATTORNEY REVIEW   $ 4,000.00
C. If BUYER is to assume the existing mortgage, see attached addendum
D. If SELLER is to take back a mortgage, then the attorney for the SELLER will prepare a purchase money mortgage and note at the expense of the BUYER. The terms shall be:
Interest rate     %; Term     , Principal and Interest (approximate) to be paid as follows   $

E. IF PERFORMANCE BY BUYER IS CONTINGENT UPON OBTAINING A MORTGAGE.
The BUYER agrees to apply immediately for a mortgage loan through any lending institution of the BUYER'S choice in the amount of   $ 204,250.00
on what is commonly known as a ☐ (FHA) ☐ (VA) ☒ (Conventional) ☐ (Other) mortgage loan payable for 30 years with interest at PREV %, or at the interest rate available and for the terms of years offered by the lending institution granting the loan. The BUYER also agrees to cooperate and supply all documents required by the lending institution in a timely fashion. Either party may terminate this agreement by written notice to the other party if (a) the mortgage loan has not been arranged by the issuance of a mortgage loan commitment or if this condition has not been eliminated from this agreement by the BUYER by 11/25/14; (b) the mortgage loan has been specifically denied in writing by the lending institution and presented to the SELLER or SELLERS appointed representative, then the deposit shall be returned to the BUYER
F. The balance of the purchase price   $ 5,750.00
Will be paid at closing of title by cash, bank check, certified check, or attorney's trust account check at which time SELLER will deliver a Bargain and Sale Deed free of all title defects except as stated in this agreement. This Deed shall contain a proper legal description of the property, together with the usual affidavit of title. The closing shall take place on or before 11/28/14.
   TOTAL PURCHASE PRICE   $ 215,000.00

7. TO BUYER AND SELLER - OPINION 26 FORM:  READ THIS NOTICE BEFORE SIGNING THE CONTRACT
The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.
1) As a real estate broker, I represent the (choose one) - ☐ The seller, not the buyer ☒ the buyer not the seller ☐ both the seller and the buyer ☐ Neither the seller nor the buyer. The title company does not represent either the SELLER or the BUYER
2) You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.
3) The contract is the most important part of this transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and to negotiate its terms
4) The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract
5) Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and surveys can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing
6) A buyer without a lawyer runs special risks. Only a lawyer can advise a buyer about what to do if problems arise concerning the purchase of this property. The problems may be about the seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So their interest may differ from yours.
7) Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision
8. MEGAN'S LAW STATEMENT - Under New Jersey law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in an area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon closing, the county prosecutor may be contacted for such further information as may be disclosable to you. See Internet Registry at www.nps.org

**9. ATTORNEY REVIEW:**

9.1 Study by Attorney. The BUYER or the SELLER may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the BUYER or the SELLER reviews and disapproves of the contract.

9.2 Counting the Time. You count the three days from the date of delivery of the signed contract to the BUYER and the SELLER. You do not count Saturdays, Sundays or legal holidays. The BUYER and the SELLER may agree in writing to extend the three-day period for attorney review.

9.3 Notice of Disapproval. If an attorney for the BUYER or the SELLER reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) and all other parties by certified mail, by telegram or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also, but need not, inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory.

**10. INSPECTION CLAUSE:**

A. The Broker(s) and Salesperson(s) who are involved in this transaction are trained Real Estate Licensees under the New Jersey Real Estate License Act. They readily acknowledge they have no special training, knowledge or experience with regard to discovering and/or evaluating physical defects including structural defects, roof, basement, mechanical equipment such as heating, air conditioning, electrical, sewage and plumbing systems, exterior drainage, termite and other types of insect infestation or damage caused by such infestation. Moreover, the Broker(s) and Salesperson(s) similarly have no special training, knowledge or experience with regard to evaluation of possible environmental conditions which might affect this property pertaining to the dwelling such as the existence of lead-based paint and lead-based paint hazards, radon gas, mold, underground storage tanks, airborne asbestos fibers and toxic chemical or other pollutants in the soil, air or water. The New Jersey New Residential Construction Off-site Conditions Disclosure Act, P. L. 1995 c. 253, requires the municipality in which the Property is located to make available lists disclosing the existence and location of certain off-site conditions, as provided in the Act, which may affect the value of the Property.

B. Buyer's Rights to Inspections

The BUYER acknowledges that the property is being sold in an "AS IS" condition. Therefore, the BUYER, at the BUYER'S sole cost and expense is granted the right to have the dwelling and all other aspects of the Property, inspected and evaluated by "state licensed inspectors" for the purpose of determining the existence of any physical defects, environmental conditions and the presence of lead-based paint or lead-based hazards such as outlined above. (Intact lead-based paint that is in good condition is not necessarily a hazard. SEE EPA PAMPHLET "PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME" for more information). If BUYER chooses to make the inspection(s) referred to in this paragraph, such inspection(s) must be completed within 10 calendar days of the date of this Agreement. (With regard to lead-based paint and lead-based paint hazards, the law applies to residential dwellings built before 1978 only and requires that unless the BUYER and SELLER agree to a longer or shorter period, SELLER must allow a ten-day (10) period within which to complete the inspection or risk assessment.) The BUYER shall furnish to the SELLER and the BROKER(S) listed in paragraph # 23 of this agreement written notice containing a list of the specific deficiencies and the corrections needed together with a copy of the inspection report(s). If the BUYER shall fail to furnish such written reports to the SELLER and BROKER(S) within 7 days of the inspection(s), this contingency shall be deemed waived by BUYER, and the property shall be deemed acceptable to BUYER.

C. If the report concludes that adverse physical or environmental conditions exist that affect the habitability of the property, the SELLER shall have the option of correcting said defect(s); SELLER shall notify BUYER of his decision within seven (7) days of the SELLER'S receipt of the inspection report.

In the event SELLER does not choose to correct said defects or fails to notify BUYER in writing, within the stated 7 days, the BUYER shall have the option of:

  1. Accepting the property AS IS

  2. Correcting the defects at his expense, if correction is necessary in order to close title

  3. Declaring the contract null and void and have all deposit moneys returned

BUYER shall serve notice in writing, of intent to SELLER within seven (7) calendar days after receipt of SELLER'S response. If SELLER fails to respond, BUYER shall serve notice of intent to SELLER within fourteen (14) calendar days after BUYER'S receipt of said inspection report. BUYER'S failure to send notice will be deemed as BUYER'S acceptance of property AS IS.

**11. TERMITE INSPECTION:** BUYER shall have the right to have an inspection by a qualified expert to determine the presence of termites or other wood destroying insects and/or damage from them. Inspection is to be performed no later than 10 days and is to be paid by the BUYER. If there is any evidence of termites or wood destroying insects, or damage from them, then the SELLER, at their own expense, shall correct and repair it.

**12. POSSESSION:** SELLER will give possession of the property to BUYER at closing, unless otherwise specified. BUYER has the right to inspect the property at any reasonable time immediately prior to closing of title. Property shall be vacant at the time of closing of title unless otherwise agreed.

**13. ZONING:** SELLER represents that to the best of his knowledge this property does not violate the local zoning or Building codes. If a Certificate of Occupancy is required by the local municipality, the SELLER will obtain it, doing whatever is required by the municipality in order to get it. SELLER also agrees to install Smoke and Carbon Monoxide Detectors as required by the municipality.

**14. ASSESSMENTS FOR MUNICIPAL IMPROVEMENTS:** All assessments for public improvements completed or under construction as date of this agreement are to be paid in full, or allowed by the SELLER at the time of closing title.

**15. ADJUSTMENTS AT CLOSING:** SELLER will pay or allow the NJ Realty Transfer Fee. Any existing mortgages or liens against the property will be paid off from the new proceeds at the closing. Rents, water charges, sewer charges, taxes, interest on any mortgage to be assumed and fuel, if any are to be pro-rated to date of passing title.

**16. PERSONAL PROPERTY AND FIXTURES:** Gas and electric fixtures, cooking ranges and ovens, built-in dishwashers, hot water heaters, linoleum and/or wall-to-wall carpeting, screens, storm windows and storm doors, shades, blinds, awnings, sump pump, heating and air-conditioning apparatus, radio and television aerial equipment, if any, except where owned by tenants, are included in this sale. These are to be in working order at time of closing. This Provision shall not survive closing of title.

The following items are included in AS IS condition

**PER MLS 3176616**

The following items are specifically EXCLUDED

**PER MLS 3176616**

**17. MAINTENANCE AND CONDITION OF PROPERTY:** SELLER agrees to provide for snow removal, maintain the grounds, buildings and improvements in good condition, subject to ordinary wear and tear. The premises shall be in "broom clean" condition and free of debris on the date of Closing. SELLER represents that all electrical, plumbing, heating and air conditioning systems (if applicable), together with all fixtures and appliances included within the terms of this Agreement now work and shall be in proper working order at the time of closing.

**18. RISK OF LOSS:** The risk of loss or damage to the property, except ordinary wear and tear, is the SELLER'S responsibility until closing.

**19. BUYER FINANCIALLY ABLE TO CLOSE:**

BUYER represents that he has sufficient cash available (together with the mortgage or mortgages referred to in Section 6) to complete this purchase.

153 **20. NO RELIANCE ON OTHERS:** This Agreement is entered into based on the knowledge of the parties as to the value of the land
154 and whatever buildings are upon the Property and not on any representation made by the SELLER, the named BROKER (S) or their
155 agents as to character or quality. **THIS MEANS THAT THE PROPERTY IS BEING SOLD "AS IS", EXCEPT AS OTHERWISE**
156 **MENTIONED IN THIS AGREEMENT.**
157 **21. BINDING AGREEMENT:** This Agreement binds the SELLER and BUYER and also their heirs and personal representative in
158 the case of death. It also is the entire and only Agreement between the parties and neither has made any promise or guaranty not
159 contained in this Agreement. It is also understood that willful refusal by either party to perform the promises and representations made
160 by them in this Agreement will subject such party to damages and will not defeat the Broker's right to commission is earned.
161 **22.** The SELLER and BUYER authorize the selling Broker to receive and retain all deposit moneys in a non-interest bearing trust
162 account and to pay same to SELLER upon closing except as stated otherwise in this Agreement. The deposit monies shall not be paid
163 over to the Seller prior to the closing of title, unless agreed in writing by both the Buyer and Seller. In the event the Buyer and Seller
164 cannot agree on the disbursement of these escrow monies, the selling Broker may place the deposit monies in Court requesting the Court
165 to resolve the dispute
166 **23.** The SELLER does authorize and direct the closing attorney to pay, at the time of closing of title, the named Broker(s) for services
167 in procuring this sale, a commission of _____ or as per listing agreement, to be paid as follows
168 to Selling Broker **Century 21 Van Syckel - Golden Post**        3.00% - $ 50 Listing Fee
169 to Listing Broker **WEICHERT REALTORS**              3.00% - $ 50 Listing Fee
170 The commission shall be due and payable at the time of actual closing of title and all purchase money consideration has been received by
171 the SELLER. The SELLER agrees and acknowledges that the dollar amount of the said commission shall be a lien (a legal claim) on the
172 purchase money proceeds derived from the sale of the subject property. The SELLER, by this Agreement authorizes and directs the
173 BUYER'S attorney, or the title company, whichever is the case, to pay to the Broker(s) the full commission as set forth above out of the
174 proceeds of sale, prior to the payment of any funds to the SELLER. The commission bill, duly receipted by the Broker or his agent, or
175 the closing attorney's or title insurance company's check in payment of such commission, shall be deemed a release and discharge of the
176 lien created by this paragraph
177 **24. NO ASSIGNMENT:** The BUYER cannot assign this Agreement (transfer it to another party) without the SELLER'S written
178 consent
179 **25. NOTICES:** All notices as required in this Contract must be in writing. All notices shall be by certified mail, telegram, telefax, or
180 by delivering it personally. The telegram, certified letter, or telefax will be effective upon sending. The personal delivery will be
181 effective upon delivery to the other party. **EACH PARTY MUST ACCEPT THE CERTIFIED MAIL OR TELEGRAM SENT BY**
182 **THE OTHER PARTY.** Notices to the SELLER shall be addressed to the address that appears on the four (4) of this Contract
183 Notices to the BUYER shall be addressed to the address that appears on line six (6) of this Contract. Notices to the Broker(s) shall be
184 addressed to the address(es) that appears at the end of this Contract
185 **26. ACCURATE DISCLOSURE OF SELLING PRICE:** The BUYER and SELLER certify that this Contract accurately reflects the
186 gross sales price as indicated on line forty one (41) of this Contract. The BUYER and SELLER UNDERSTAND AND AGREE THAT THIS
187 INFORMATION SHALL BE DISCLOSED TO THE INTERNAL REVENUE SERVICE AS REQUIRED BY LAW.
188 **27. POINTS:** The SELLER agrees to pay up to 0 % of the mortgage amount to a lending institution as a finance charge.
189 **28. CLOSING COSTS:** The SELLER agrees to credit the BUYER up to $6,450. at time of closing, towards BUYER'S closing costs
190 **29. NOTICE OF ON-SITE AND OFF-SITE CONDITIONS** - Pursuant to the New Residential Construction Off-site Conditions
191 Disclosure Act, P. L. 1995, c. 253 the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the
192 value of residential properties in the vicinity of the off-site condition. BUYERS may examine the lists and are encouraged to
193 independently investigate the area surrounding this property in order to become familiar with any on-site or off-site conditions which
194 may affect the value of this property. The Air Safety and Hazardous Zoning Act requires BUYERS to be informed by SELLERS if their
195 property is located in an airport safety zone. In cases where a property is located near the border of a municipality, BUYERS may wish
196 to also examine the list maintained by the neighboring municipality.
197 **30. CONSUMER INFORMATION STATEMENT ACKNOWLEDGEMENT:**
198 By signing below, the SELLERS and BUYERS acknowledge they received the Consumer Information Statement on New Jersey Real
199 Estate Relationships from the brokerage firms involved in this transaction prior to the first showing of the property.
200 **31. FLOOD AREA:** This contract is contingent upon the BUYER, at the BUYER'S expense, obtaining a "Flood Area Certification". If
201 the subject property is found to be in a "Flood Area" then the BUYER may cancel this contract within seven (7) calendar days of the
202 date of this contract and obtain return of all deposit monies
203 **32. DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT & LEAD-BASED PAINT HAZARDS:**
204 Every Purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
205 property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead
206 poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient,
207 behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The SELLER of any
208 interest in residential real property is required to provide the BUYER with any information on lead-based paint hazards from risk
209 assessments or inspections in the SELLER'S possession and notify the BUYER of any known lead-based paint hazards. A risk
210 assessment or inspection for possible lead-based paint hazards is recommended prior to purchase
211 Seller's Disclosure (Initial):
212      ☐ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below)
213      ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain)
214      _____
215      ☐ SELLER has no knowledge of lead-based paint and/or lead-based paint hazards in the housing
216      (b) Records and reports available to the SELLER (check one below)
217      ☐ SELLER has provided the BUYER with all available records and reports
218      pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents)
219      _____
220      ☐ SELLER has no reports/records pertaining to lead-based paint and/or lead-based paint hazards in the house
221      (c) **If There is any change in the above Information prior to seller accepting an offer from the**
222      **purchaser to purchase, seller will disclose all changes to the purchaser prior to accepting the offer.**
223
224 Buyer's Acknowledgement (Initial):
225      (a) BUYER has received copies of all information listed above.
226      (b) BUYER had received the pamphlet Protect Your Family From Lead in Your Home
227      (c) BUYER has (check one below)
228      ☒ Received a 10-day opportunity (or mutually) agreed upon period of ____ ) to conduct a risk
229      assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards, or
230      ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based
231      paint and/or lead-based paint hazards
232 Agent's Acknowledgement (Initial):
233      (a) Agent had informed the SELLER of the SELLER'S obligations under 42 U. S. C. 4852(d) and
234      is aware of his/her responsibility to ensure compliance

235 | **33. PRIVATE WELL TESTING ACT:** This contract is contingent upon completion of all State required testing and disclosures
236 | pursuant to N.J.S.A. 58 12-A-26-37 and regulations, N.J.A.C. 7:9E-3.1-5.1. The Seller agrees to produce this test at his own expense
237 | and provide a copy to the buyer. If the test does not meet the applicable standards then this issue shall be resolved pursuant to paragraph
238 | C of Section 9.
239 | **34. TITLE:** The SELLER represents that the buildings on the property are located within the lot boundary lines; that there are no
240 | encroachments or easements, or survey or other defects not mentioned in this agreement that would result in a bad title. Good title is
241 | defined for the purposes of this agreement as that which can be insured by any of the title companies licensed by the State of New Jersey,
242 | at normal and usual rates and without exception other than those that are standard in all policies and those mentioned in this Agreement.
243 | Utility easements and restrictions of record shall be accepted by the BUYER without objection provided the use described in **Paragraph**
244 | **#11** is not prevented.
245 | **35. TENANTS:**
246 | Seller warrants that no tenant has an interest in the property, except as may be stated under the section of the contract entitled
247 | "Additional Contractual Provisions."
248 | **36. NEW JERSEY HOTEL AND MULTIPLE DWELLING HEALTH AND SAFETY ACT:**
249 | If the New Jersey Hotel and Multiple Dwelling Health and Safety Act applies to the Property, the Seller represents that the
250 | Property complies with the requirements of the Act.
251 | **35. DECLARATION OF LICENSEE BUSINESS RELATIONSHIP(S):**
252 | A) I, NANCY CAMERON, (name of licensee) as authorized representative of Century 21 Van Syckel -
253 | Golden Post (name of license firm) am working in this transaction as a (choose one) □ SELLER'S Agent Only: ☒ BUYER'S
254 | Agent Only; □ Disclosed Dual Agent; □ Transaction Broker.
255 | B) Information supplied by WEICHERT REALTORS (name of other firm) has indicated that it is operating in this transaction
256 | as a (choose one) □ SELLER'S Agent Only; □ BUYER'S Agent Only; □ Disclosed Dual Agent; □ Transaction Broker.
257 | **36. ADDENDUM/ADDENDA ATTACHED? (INCLUDING NEW CONSTRUCTION RIDER)** □ Yes □ No
258 | **37. ADDITIONAL CONTRACTUAL PROVISIONS (IF ANY):**
259 | 1. SELLER AGREES TO CREDIT BUYER UP TO $6450.00 IN CLOSING COSTS. 2. WELL WILL BE TESTED AND
260 | CAPPED, IF ABANDONED WELL ON PROPERTY, SELLER WILL PROVIDE CERTIFICATE. 3. DEBRIS ON PROPERTY
261 | INCLUDING BACK CORNER WILL BE REMOVED.
262 | 4. PLEASE MOVE REFRIGERATOR FROM GARAGE TO KITCHEN TO ENSURE PROPER FIT. 5. THE SALE OF THE
263 | SELLER'S RIGHTS, TITLE, AND INTEREST IN THE PROPERTY TO BUYER SHALL BE "AS IS", ON A "WHERE IS"
264 | BASIS. AS OF THE CLOSING DATE AND IS WITHOUT RECOURSE, REPRESENTATION, OR WARRANTY OF ANY
265 | KIND TO OR BY THE SELLER, WHETHER EXPRESS, IMPLIED, OR IMPOSED BY LAW, WHICH RECOURSE,
266 | REPRESENTATIONS, OR WARRANTIES ARE THEREBY EXPRESSLY DISCLAIMED BY BUYER.

274 | **38. CERTIFICATION OF ACCURACY:** The following parties have reviewed the information above and certify, to the best of their
275 | knowledge, that the information they have provided is true and accurate.

Witness:

SELLER  (CHAPTER 7 BANKRUPTCY Trustee)   10/28/14   Date

SELLER   S.S.#   Date

BUYER   S.S.#   10/20/14   10/28/14   Date

BUYER   S.S.#   10/20/14   10/28/14   Date

Selling Broker: Century 21 Van Syckel-Golden Post   1701 Route 22 West, P.O. Box 8127   Bridgewater, NJ 08807
Phone: (732) 560-0200   Fax: (732) 805-0831

Listing Broker: WEICHERT REALTORS
Phone: 908-735-8140   Fax: 908-735-8372

Sellers Attorney:   Address:
Phone:   Fax:

Buyers Attorney:   Address:
Phone:   Fax:

Listing Office ID
Listing Agent ID
Selling Office ID: 4333
Selling Realtor ID

### ADDENDUM TO THE CONTRACT FOR SALE
### 420 BLOOMSBURY ROAD, FRANKLIN TOWNSHIP, NEW JERSEY

1.    Paragraph 6E (Mortgage Contingency) is amended to provide that the sellers will not unreasonably withhold consent to extend time for mortgage commitment, if requested by purchasers, provided purchasers are making good faith efforts to obtain a mortgage loan.

2.    Paragraph 17 of the Contract is deleted in its entirety and replaced as follows:

> **17.   MAINTENANCE AND CONDITION OF PROPERTY: SELLER** agrees to provide for snow removal, maintain the grounds, buildings and improvements, in good condition, subject to ordinary wear and tear.  The premises shall be in "broom clean" condition and free of debris on the date of Closing.

3.    Paragraph 18 of the Contract is amended to provide that in the event the subject premises suffer injury or damage beyond ordinary wear and tear between the Contract date and the closing of title in excess of 10 percent of the purchase price, either the buyer or the seller shall have the right to void this Contract whereupon the deposit monies would be returned to the buyer.

4.    Paragraph 21 of the Contract is deleted in its entire and replaced as follows:

> **21.   Binding Agreement:**  This Agreement binds the **SELLER** and **BUYER** and also their heirs and personal representative in the case of death.  It also is the entire and only Agreement between the parties and neither has made any promise or guaranty not contained in this Agreement.  It is also understood that willful

refusal by either party to perform the promises and representations made by them in this Agreement will subject such party to damages.

5.     Buyer understands that this Contract and the sale of the Property is subject to Bankruptcy Court Approval.  Closing on the transaction set forth in the Contract shall occur within fifteen (15) calendar days from the date of the Bankruptcy Court's entry of an Order approving the Contract and the sale of the Property to Buyer.  If this Contract and the sale of the Property is not approved by the Bankruptcy Court, this Contract shall be null and void and made without prejudice to either party.

6.     The federal and state governments have designated certain areas as "flood areas."  This means that they are more likely to have floods than other areas.  The Buyer may, at the Buyer's expense, obtain a "Flood Area Certification."  If the Property is in a "flood area," the Buyer may cancel this Contract within ten (10) calendar days of the date of this Contract and obtain return of all deposit moneys.

7.     Buyer shall confirm that; any easements or restrictions of record will not substantially interfere with the use of the property as a single family home, title to the lands and premises will be marketable and insurable at regular rates by a title insurance company licensed to conduct business in the State of New Jersey and all buildings, driveways and other improvements upon the premises are within the property boundary lines and that there are no encroachments thereon on or before November 21, 2014. In the event that any easements or restrictions of record does substantially interfere with the use of the property as a single family home, title to the lands and premises is not marketable and insurable at regular rates by a title insurance company licensed to conduct business in the State of New Jersey and all buildings or driveways and other improvements upon the premises are not within the property boundary lines then buyer may cancel the Contract and all deposit monies shall be returned.

8.     The lands and premises are to be delivered to the purchasers free and clear of debris and personal property and shall be delivered at closing in a broom-clean condition and in substantially the same condition as the date of Contract execution except for reasonable and wear and tear for usage by

the sellers prior to closing. Purchasers will be permitted to conduct a final walk-thru inspection immediately prior to closing in order to verify the condition of the property.

9.   The Contract is contingent upon the premises to be conveyed not being subject to radon contamination in excess of acceptable limits of 4.0 pico curies in the basement or 2.0 pico curies on the first floor living space. Purchasers shall have 14 days from the date of final Contract approval to satisfy this contingency. If unacceptable limits are found, sellers have ten (10) days from the receipt of the radon inspection report to determine if they will make adequate repairs to correct the adverse radon condition. Should sellers decide not to remediate, purchasers shall have the option to cancel this Contract and the parties hereto shall have no further rights, liabilities or obligations to one another. If sellers elect to make corrections, they shall furnish the purchasers with retest results and supply the purchasers with a certification from the company performing the correction.

10.   Any notice required pursuant to the Contract, including any notice under the attorney review provisions of the Contract, shall be effective if sent by confirmed Fax to both Realtors and the attorney for either party. Any requirement for certified mail is hereby expressly waived by both parties, both Realtors and both attorneys.

11.   Lines 171-176 shall be deleted from the Contract.

12.   Seller shall provide a Bargain and Sale deed with covenants vs. grantors' acts at closing.

13.   WATER FILTRATION SYSTEM (If applicable). In the event that a water filtration system is currently installed at the subject premises or needs to be installed to make the water satisfy the Private Well Testing Act and the annual maintenance cost exceeds $500.00 then, in that event, the Buyer shall have the right to void the Contract and receive back all deposit monies paid.

14.   This Contract is contingent upon the Buyer obtaining a firm written commitment for a thirty (30) year conventional mortgage in the amount of $204,250.00 on or before November 25, 2014. It is understood and agreed to that the failure of the

Buyer to obtain such a commitment on or before the date specified
in the Contract shall not constitute a waiver of the mortgage
contingency by the Buyer.  At the Buyer's request, the Seller may
also extend the mortgage contingency date in writing prior to the
above commitment date.

15.   If Buyer is unable through exercise of reasonable
diligence to satisfy all conditions of the mortgage commitment,
or die, become disabled as defined by Social Security or lose
employment involuntarily, at any time prior to Closing, Buyer may
cancel this Contract.

16.   Where the terms of this Addendum and the Contract
conflict, the terms of this Addendum shall be deemed controlling.

17.   The within Contract is subject to and conditioned upon
the appraised value of the property being not less than the
purchase price.  In the event that the appraised value of the
property is less than the purchase price, the buyer may void the
Contract and shall not incur any penalty by forfeiture of deposit
monies unless the parties are able to agree upon a price
reduction.

18.   Buyer shall not be obligated to assume any existing
service contracts for any systems servicing the subject dwelling
or property.

19.   It is the understanding of the parties that this is an
"as is" transaction. Therefore, paragraph 10C shall be amended as
follows: **C**. If the report (homes inspection, radon inspection,
termite inspection or septic inspection) concludes that a
material adverse physical or environmental conditions exist that
affect the habitability of the property, the **BUYER** shall notify
**SELLER** within seven (7) days of the **BUYER'S** receipt of the
inspection report.

In the event **BUYER** notifies **SELLER** within the stated 7 days, the
**BUYER** shall have the option of:
            1.   Accepting the property **AS IS**.
            2.   Correcting the defects at his expense if
correction is necessary to close title.
            3.   Declaring the Contract null and void based on
the inspection report evidencing the need for major replacements
and/or repairs to correct material adverse physical defects,

material adverse physical conditions, or material adverse
environmental conditions that affect the habitability of the
property.

**BUYER** shall serve notice in writing of intent to **SELLER** within
seven (7) calendar days after receipt of inspection report.
**BUYER'S** failure to send notice will be deemed as **BUYER'S**
acceptance of the property **AS IS**.

_____
Christopher Pehrson (Buyer)

_____
Alfred T. Giuliano (Seller)
*Chapter 7 Bankruptcy Trustee*

_____
Julia Pehrson (Buyer)